CHARLES F. CRAVER, *et al.*, V. CHARLES HORNBURG.

1. MACHINE; *Implied Agreement.* When a machine is ordered from a manufacturer for a specific and understood purpose, it is impliedly agreed that such machine, when constructed, shall be reasonably fit for such purpose; and if upon trial within a reasonable time it proves unfit, the purchaser may return the machine and rescind the contract. Mere receipt of the machine is not such an acceptance thereof as debars the purchaser from this right; neither is this right destroyed by the fact that in the contract for the machine the manufacturer, in writing, agreed that it should be well made, of good material, and that with proper management it would do the work intended.

2. ——— *Irrelevant Testimony.* Where the question is, whether the machine purchased as above failed through defect in its construction or in consequence of mismanagement, and the question is by the testimony a doubtful one, it is material error for the court to permit testimony that some other machine furnished by the same manufacturer similarly failed.

3. JURY, *Must be Guided by the Evidence.* While the jury have a right in making up their verdict to use their general knowledge, such as any man may bring to the subject, yet beyond that they must be guided by the testimony, and may not resort to any knowledge which they may have by reason of their familiarity with any special business or occupation.

*Error from Ellsworth District Court.*

ACTION brought by *Charles F. Craver* and *Alonzo Steele,* partners as Craver & Steele, against *Hornburg,* on a promissory note. Trial at the February Term, 1881, of the district court, and judgment for the defendant. The plaintiffs bring the case here. The opinion states the facts.

*Garver & Bond,* for plaintiffs in error.

*L. H. Seaver,* and *Samuel Atwood,* for defendant in error.

The opinion of the court was delivered by

BREWER, J.: This was an action on a note given in part payment for a Randolph header machine sold by plaintiffs in error to defendant in error, and was tried in the district court on appeal from a justice of the peace. The action was tried before a jury, which returned a verdict for the defendant.

The defense was, that the machine was not reasonably fit for the work for which it was purchased, and upon discovery of the fact was, within a reasonable time, returned by the defendant to the plaintiff. Counsel for the plaintiffs in error challenge the whole scope of this defense, and insist that the machine had been accepted with a limited warranty, and that the only remedy that the defendant had was to retain the machine and recoup his damages sustained by breach of the warranty. We cannot agree with counsel in this claim; we think that when an article is ordered from a manufacturer for a specific and understood purpose, the purchaser may, after giving the article a fair trial and finding it unfit for the intended use, return it within a reasonable time to the manufacturer. An express agreement such as was in this case, that the machine should be made of good material and well made, and should work well with proper management, does not deprive the purchaser of the right to return the machine if it will not do the intended work. Doubtless if the unfitness was apparent on the face, and the purchaser nevertheless accepted the article, the right to return would be lost; but if the unfitness could only be determined by actual use, then until such use was had or a reasonable time therefor had elapsed, the purchaser was not absolutely bound. The mere receipt of the article is not, under those circumstances, such an acceptance of the contract as precludes the purchaser from further question. However, we shall not stop to discuss this subject in detail, for we think that there are one or two reasons on account of which the judgment must be reversed.

1. Machine; implied agreement.

The claim of the defendant was, that the machine was not reasonably fit for the work for which it was purchased, and in support of this he offered considerable testimony. Plaintiffs, on the other hand, contended that it would do the work for which it was purchased, and that the trouble arose from mismanagement on the part of the defendant, and offered testimony in support thereof. Without noticing the testimony in detail, we may say in general terms that it leaves a

very doubtful question; it is not clear that either party was right, and when a question of fact is so doubtful, it is of importance that no improper testimony be admitted which would tend to turn the scale one way or the other. Now, over the objection of plaintiffs, the defendant was permitted to show that other machines bought from the plaintiffs manifested a defect similar to that charged against this machine. We think in this respect the scope of the inquiry was improperly enlarged. It is nowhere pretended that the Randolph header as a machine was unfit for the purpose for which it was designed; the claim was, that this particular header was so defectively constructed that it would not do the ordinary work of such machines. Now it does not tend to prove that this machine was defectively constructed, to show that some other machine was also similarly defective. If the defendant could show that any other Randolph header gave the same trouble, then the plaintiffs of course ought to be permitted to show that the difficulty arose from mismanagement and not from defect, and the attention of the jury would be turned to inquiries entirely foreign to the matters involved. The district court in admitting this testimony evidently appreciated the fact that it was irrelevant, but admitted it as stated because of some testimony given by the general agent of the plaintiffs. The reason given by the learned court is not sufficient, for all of the testimony given by such agent which might furnish a semblance of excuse, was drawn out in cross-examination by the defendant. The rule is well settled that a party cannot draw out in cross-examination irrelevant testimony, or testimony on matters foreign to the issue, and then contradict such testimony; and this testimony was material, and likely to prejudice one of the parties to this suit. The question really was, whether the trouble arose from defects, or from mismanagement. Now to permit testimony that other machines furnished by plaintiffs occasioned the same trouble, would lead a jury to believe that the trouble in this case arose from defect, and not from mismanagement. The plaintiffs could not be expected to be present with testimony to show

2. Irrelevant testimony.

that there was mismanagement as to these other machines, and in fact did not offer any; so that the jury had before them not only the fact that this machine made trouble, the corresponding testimony as to its mismanagement, but also the further and unexplained testimony that other machines furnished by plaintiffs caused similar trouble. Naturally, the inference therefrom would be that the machine here causing trouble was defectively constructed, and not that the trouble arose from any mismanagement. The jury would not be apt to give due weight to the testimony tending to show mismanagement, and would naturally incline to the belief that the trouble arose from a defective construction of the machine. Oftentimes such irrelevant testimony as this is not of sufficient moment to disturb a verdict—it may be treated as immaterial and working no prejudice; but as we read the testimony in this case the question is so doubtful we cannot but think the jury may have been unduly influenced by it against the plaintiffs. Therefore we are compelled to set aside the verdict and order a new trial.

One other matter is referred to, which we think deserves notice. The court in its instructions said to the jury, "You can, in determining the issues, or any of them, use such general knowledge as you possess in common with all those engaged in the kind of business involved." While this of itself may not be sufficient to justify disturbing the verdict, yet we think a jury might be misled by its language, and that the language itself is a little contradictory in its terms. A jury has a right to avail itself of such general knowledge as all men possess, but not to resort to any knowl-

.3. Jury must be guided by the evidence.

edge derived from employment in any kind of business. Supposing this jury were all composed of machinists, they are not to be guided by their knowledge of machinery — a knowledge which only they who are engaged in such occupation possess — but by the testimony offered before them; and that which is true of the jury as a whole, is also true as to each individual member thereof. He may not testify to the others. It is true, the court speaks of general

7 — 26 KAS.

knowledge, but it limited this general knowledge to that acquired by persons in any particular line of business. This is liable to misconstruction, and might in some cases mislead the jury. We refer to this matter, not because we deem it of itself sufficiently important to justify setting aside the judgment, but to guard against any enlargement of the directions as to the extent to which a jury may be influenced by their personal knowledge of matters and things.

For the error heretofore indicated, the judgment must be reversed, and the case remanded for a new trial.

All the Justices concurring.