GALVESTON, H. & S. A. RY. CO. v. ENDERLE. (No. 5323.)

(Court of Civil Appeals of Texas. San Antonio. Oct. 14, 1914. Rehearing Denied Nov. 11, 1914.)

1. STATUTES (§ 47*)—VALIDITY—CERTAINTY—STATUTORY PROVISIONS.

Rev. St. 1911, art. 6713, forbidding common carriers to use locomotives or cars not provided with sufficient and secure grabirons, handholds, and foot stirrups, is not invalid on the ground that the legislative intent cannot be ascertained because of the failure to designate the number, dimensions, location, and manner of application of the appliances provided for, as the language used is plain and no difficulty can be experienced in meeting the simple requirements of the statute.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 47; Dec. Dig. § 47.*]

2. MASTER AND SERVANT (§ 111*)—RAILROAD COMPANIES — SAFETY APPLIANCES — STATUTORY PROVISIONS—"SUFFICIENT"—"SECURE."

The word "sufficient" as used in Rev. St. 1911, art. 6713, requiring railroad locomotives and cars to be provided with sufficient and secure grabirons, handholds, and foot stirrups, is not synonymous with "secure" which as used in the statute means "safe," nor does it refer to the number of appliances, but is used in the sense of adequacy and adaptation to the end desired, and means fitness to answer the purpose for which the appliance is intended.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 215–217, 255; Dec. Dig. § 111.*

For other definitions, see Words and Phrases, First and Second Series, Secure; Sufficient.]

3. MASTER AND SERVANT (§ 111*)—RAILROAD COMPANIES—SAFETY APPLIANCES.

The rule of strict construction applied in construing penal statutes does not apply to the construction of Rev. St. 1911, art. 6713, relative to providing grabirons, handholds, and foot stirrups on locomotives and cars, when sought to be enforced in a civil action.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 215–217, 255; Dec. Dig. § 111.*]

4. MASTER AND SERVANT (§ 286*) — ACTIONS FOR INJURIES—QUESTIONS FOR JURY.

Whether a handhold on a railroad car which gave way and precipitated an employé to the ground when his weight or a part thereof was placed on it was sufficient and secure, within Rev. St. 1911, art. 6713, was a question of fact for the jury, and not a question for the court.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1008, 1010–1015, 1017–1033, 1036–1042, 1044, 1046–1050; Dec. Dig. § 286.*]

5. TRIAL (§ 256*)—INSTRUCTIONS—NECESSITY OF REQUESTS.

In an action for injuries to a railway employé caused by a handhold giving way, the court's failure to define the terms "sufficient" and "secure" as applied to handholds was an error of omission, and the party complaining should have asked a special charge to remedy the omission.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 628–641; Dec. Dig. § 256.*]

6. MASTER AND SERVANT (§§ 101, 102*)—RAILROAD COMPANIES — SAFETY APPLIANCES — STATUTORY PROVISIONS.

Under Rev. St. 1911, art. 6713, it is the duty of railway companies to furnish sufficient and secure handholds on cars, and not merely to exercise ordinary care.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 135, 171, 174, 178–184, 192; Dec. Dig. §§ 101, 102.*]

Appeal from District Court, Bexar County; R. B. Minor, Judge.

Action by T. L. Enderle against the Galveston, Harrisburg & San Antonio Railway Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Baker, Botts, Parker & Garwood, of Houston, and Templeton, Brooks, Napier & Ogden, of San Antonio, for appellant. John Schorn, of San Antonio, for appellee.

FLY, C. J. This is a suit for damages arising from personal injuries inflicted upon appellee, an employé of appellant, through a defective handhold on one of appellant's cars. The cause was tried by jury, and resulted in a verdict and judgment for appellee in the sum of $9,750.

The evidence discloses that appellee, while in discharge of his duty as an employé of appellant, sought to leave the top of a car and in doing so laid hold of the handhold

on the car, which gave way and precipitated him to the ground, inflicting upon his person serious and permanent injuries.

[1] The first assignment of error assails the validity of article 6713, Rev. Stats. 1911, "because it does not designate the number, dimensions, location, and manner of application of the appliances provided for, or prescribe any means by which the legislative intent in that regard can be ascertained, and it is impossible from the language of the statute to ascertain the legislative intent, or what would constitute compliance with the provisions of the statute." The article in question reads as follows:

"It shall be unlawful for any common carrier engaged in commerce as aforesaid, to use in moving intrastate traffic within said state any locomotive, tender, cars, or similar vehicle which is not provided with sufficient and secure grabirons, handholds and foot stirrups."

While the language is somewhat tautological and not specially marked with elegance, it seems to be plain and simple, and capable of being understood by any one who desires to understand it. The statute does not purport to provide the size, material, number, or style of the appliances mentioned, but it merely provides for such appliances as are "sufficient and secure," such, for instance, as will not give way and precipitate the servants of the corporation to the earth, as happened in this case. The law has often been enforced in this state, and railroad companies have not heretofore evinced any doubt as to the meaning and intent of the simple language in which the statute is couched. The statute was enacted to protect those who were called upon to use the appliances named, and it was not incumbent upon the Legislature to state that by the words "sufficient and secure" it was meant that the appliances would not be safe unless they were strong enough to sustain the weight of the passenger or employé who might use them.

[2] Appellant insists that by the word, "sufficient," used in the statute it was intended to prescribe the number of appliances that should be used, but if that be true we fail to see what satisfaction appellant can obtain from that construction, because the appliances were to be both "sufficient and secure," and under the facts the handhold was certainly not secure, no matter how many of them may have been on the car. We are of opinion, however, that the word, "sufficient" is used in the sense of adequacy and adaptation to the end desired. It means fitness to answer the purpose for which it was intended. It is not synonymous with "secure," which, as used in the statute, means safe. We can readily understand that a handhold might be perfectly secure and yet not be sufficient for the purposes for which it is used. The words used in the statute are plain, and no difficulty can be experienced in meeting the simple requirements of the statute. Language as general as that used in the statute under consideration has often been held valid. Berry v. State, 135 S. W. 631; Waters-Pierce Oil Co. v. State, 48 Tex. Civ. App. 162, 106 S. W. 925; Katzman v. Commonwealth, 140 Ky. 124, 130 S. W. 990, 30 L. R. A. (N. S.) 519, 140 Am. St. Rep. 359; People v. Apfelbaum, 251 Ill. 18, 95 N. E. 995; State v. Railway, 177 Ind. 553, 96 N. E. 340.

[3] It must be kept in mind that this is a civil action, and that the rule of strict construction of the statute does not apply as in construing penal statutes. Even in construing that class of statutes, reason, conservatism, and common sense should be exercised and no statute lightly set aside and the sovereign will of the people thereby defeated. Every law enacted by the Legislature should be respected and never annulled by a court when the legislative will is expressed with reasonable certainty. No such unreasonable construction will be tolerated as that in the Kentucky case of Matthews v. Murphy, cited by appellant, which is thus criticized in the cited case of Berry v. State:

"Human ingenuity could not frame a law that would answer the demands of the decision in the case of Matthews v. Murphy (Ky.) 63 S. W. 785, 54 L. R. A. 415, for it would require that every conceivable unprofessional act should be set out and defined before a license could be revoked for any such act."

The language held to be sufficient in the Berry Case was "other grossly unprofessional or dishonorable conduct of a character likely to deceive or defraud the public," and is much more general and indefinite than "sufficient and secure." Legislatures are not expected to attach lexicons to their laws and define words every one is presumed to understand. We overrule all assignments of error attacking the validity of the statute.

[4] It was a question of fact to be determined by the jury as to whether the handhold was "sufficient and secure." It was for them to say whether a handhold was such that broke when a man's weight, or a part thereof, was placed on it; and no question was presented as to the safety of the appliance to be determined by the court.

[5] If the court erred in not defining the term "sufficient and secure," it was an error of omission, and appellant should have asked a special charge to remedy the omission.

[6] It was the duty of appellant to furnish a sufficient and secure handhold, and the exercise of ordinary care did not meet the requirement of the statute. As said by Chief Justice James for this court, in discussing the act in question and the federal statute in Railway v. Kurtz, 147 S. W. 658:

"Railway companies, under these statutes, are required to do more than exercise ordinary care to have and maintain secure handholds, etc. They are required to do more than exercise a high degree of care. * * * Under these statutes, there would seem to be no defense available, unless it be that the plaintiff himself deliberately caused the handhold, which gave way and injured him, **to be insecure.**"

It follows that the court properly refused to present any issue as to ordinary care upon the part of appellant.

We cannot hold that the verdict is excessive. There is evidence to sustain the amount found by the jury.

The language used by the attorney for appellee in his closing address to the jury could not have injured appellant, had it not been withdrawn and the jury instructed to disregard it, as was done by the court.

The judgment is affirmed.